IRVING, J.,
for the Court.
¶ 1. This is an appeal by Jamie Oster from a judgment of the Chancery Court of Lincoln County awarding his former wife, Jan Oster, permanent periodic alimony in the amount of $500 per month. Jamie’s sole issue on appeal is that the chancellor erred in awarding permanent periodic alimony.
FACTS
¶ 2. Jamie and Jan were divorced in August 2001. The judgment of divorce ordered Jamie to pay rehabilitative alimony for a period of six months but contained a provision that, at the end of the six month period, the court would review Jamie’s financial situation to determine whether “to continue the rehabilitative alimony, make the rehabilitative alimony permanent, terminate the rehabilitative alimony or make adjustments in connection therewith.”
¶3. The review hearing was held in March 2002. At the beginning of the hearing, the chancellor stated the matter for resolution as follows:
This matter is before the Court on a six month review of the financial situation of Mr. Oster to determine whether or not rehabilitative alimony should be continued, whether or not that rehabilitative alimony should be converted to permanent alimony, or to make any other adjustments in connection therewith the Court deems appropriate, and to consider whether or not an extension in time is necessary for the payment of the attorney’s fees ordered by this Court.
¶ 4. During the hearing, both Jan and Jamie presented testimony of their respective financial conditions. Jamie testified that he was self employed as a yard maintenance worker and worked as an umpire during baseball season. He further testified that he had worked at a job in Louisiana since his last court appearance which was during the divorce proceedings. He testified that “the work was not hard or anything like that, but it was not my kind *430 of work. I was not accustomed to that kind of work.”
¶ 5. On cross-examination, Jamie claimed that he quit the job in Louisiana because it did not offer any benefits. He stated that during his three months of employment there, he was guaranteed ninety-one hours a week, at $10 per hour for the first forty hours and $15 an hour for any overtime.
¶ 6. Jamie produced what he called a financial statement but when he was asked the amount of his adjusted gross income, he was unable to state the amount, responding that “he could not say, but it was not very much.” He admitted that he had paid his court-ordered child support only one month. However, he had paid his daughter’s car note and insurance as ordered by the court. He further testified that he had given his daughter money and had helped her with the purchase of school items and the maintenance of her automobile. Jamie further testified that he had paid five out of the six house notes that he was ordered to pay. Finally, Jamie testified that he was not able to continue paying the house payments or any money to Jan.
¶ 7. Jan, as might be expected, testified that she needed support from Jamie by way of either alimony or payment for a place to live for herself and the two children. She testified that her income had not changed since she was in court during the divorce proceedings. She testified that her monthly income was $1,300 and that her monthly expenses were $1,400. She also testified that she owed two outstanding loans in the amount of $700 each. Jan further testified that Jamie had not made a house payment since December and that the house was in foreclosure. She concluded her testimony with an affirmation of her continuing need for support.
¶ 8. At the conclusion of the testimony, the chancellor found that the court had not given a lot of credibility to Jamie’s financial information. The chancellor stated that he did not “believe that it was any different this time.” The chancellor further remarked that he did not believe that there was “really a great difference in what [Jamie] testified to about his income [at the divorce hearing] and now.” As a result, the chancellor reasoned that, based upon the prior findings of the court, the alimony would continue, but it would be changed to permanent periodic alimony at $500 per month. The chancellor relieved Jamie of making the house payments, but ordered that Jamie’s obligation for the alimony payment would be retroactive to January when Jamie stopped making the house payments. Additional facts will be related during our discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 9. As noted in an earlier portion of this opinion, Jamie argues that the chancellor erred in ordering him to pay periodic alimony to his former spouse. He seeks a reversal and rendering of the chancellor’s decision.
¶ 10. Our standard of review of a chancellor’s award of alimony is very clear. Voda v. Voda, 731 So.2d 1152, 1154(¶7) (Miss.1999). Since the decision to award alimony, as well as the amount, is left to the discretion of the chancellor, we will not reverse unless the chancellor manifestly erred or abused his discretion. Id.
¶ 11. Similarly, the standard is the same for periodic and rehabilitative alimony. Id. at 1155(¶ 8). Rehabilitative alimony is simply a variation, an additional tool to be used in the chancellor’s discretion. Id. This type of alimony provides for a party who is trying to become self-supporting and prevents that party from be- *431 coining destitute while searching for a means of income. Id. It is for a fixed period, in contrast to periodic alimony which is for an indefinite period. Id.
¶ 12. Both Jan and Jamie properly advance that with any type alimony award, factors for the chancellor’s consideration are as follows: (1) the income and expenses of the parties, (2) the health and earning capacities of the parties, (3) the needs of each party, (4) the obligations and assets of each party, (5) the length of the marriage, (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide childcare, (7) the age of the parties, (8) the standard of living of the parties, both during the marriage and at the time of the support determination, (9) the tax consequences of the spousal support order, fault or misconduct of either party, (10) wasteful dissipation of assets by either party, or (12) any other factor deemed by the court to be just and equitable in connection with the setting of spousal support. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).
¶ 13. Jan contends that the Armstrong factors were set out and followed by the chancellor in his opinion rendered in the divorce proceeding, and that, since Jamie did not provide a transcript of that proceeding with the record of this appeal, we have nothing to review. We agree that the absence of the transcript of the divorce proceedings prevents any review of the chancellor’s initial decision to grant rehabilitative alimony. However, that is not the decision which is the subject of this appeal. When the chancellor, in the judgment of divorce, ordered Jamie to pay rehabilitative alimony for six months and neither he nor Jan appealed, that judgment became final. A judgment of divorce is not temporary. The review provision was contained in the judgment of divorce, not in a separate temporary order. The consequences flowing from the finality of that judgment are binding on both Jamie and Jan. In that judgment, the chancellor determined that Jan should receive rehabilitative, not permanent periodic alimony. We must assume that when the chancellor ordered rehabilitative alimony, as opposed to permanent alimony, his initial decision was correct.
¶ 14. Rehabilitative alimony, by its very nature, is intended to be short term and provide protection to the recipient until that person becomes self supporting. Rehabilitative alimony can never be permanent. Inasmuch as the chancellor had ordered rehabilitative alimony initially and that judgment had become final, any review six months later would necessarily be a review of what had been ordered. In this case, that was rehabilitative alimony.
¶ 15. Apparently, the review was commenced by a motion filed by Jan. A copy of that motion does not appear in the record before us, but, based on the discussions in the record, it does not appear that it was a motion for modification of the provisions of the judgment of divorce based on a material change in circumstances. Rather, it appears that it was simply a motion to initiate a review in compliance with the provision contained in the judgment of divorce.
¶ 16. Consequently, we hold that the chancellor erred in converting the rehabilitative alimony into permanent periodic alimony. In order for the chancellor to change the alimony from rehabilitative to permanent periodic, a motion for modification needed to have been filed. Thereafter, it would have been incumbent upon the chancellor to make written specific findings of fact as to the reasons that the rehabilitative alimony needed to be termi *432 nated and permanent periodic alimony substituted. That was not done here. Notwithstanding the fact that a motion for modification was not filed, we see nothing in the record which would support a finding that a material change in Jan’s circumstances had occurred between the date of the judgment of divorce, when the chancellor made the initial award of rehabilitative alimony, and the date of the review hearing when the chancellor converted the rehabilitative alimony to permanent periodic. She testified that her income remained the same. There was testimony that the marital home had gone into foreclosure, but apparently that was caused by Jamie’s failure to make the rehabilitative alimony payments as ordered.
¶ 17. Further, during the review hearing, the chancellor erred in focusing on Jamie’s financial condition. The focus should have been on Jan’s financial condition. The fact that Jamie’s financial condition was about the same as it had been earlier had no bearing on whether Jan had arrived at a point that she no longer needed financial help. Therefore, we reverse and remand for the chancellor to make a determination as to whether there is a need to extend the time period in which Jamie should make rehabilitative alimony payments to Jan, and if so, for how long. Additionally, if the chancellor determines that an extension of rehabilitative alimony is in order, he may revisit the amount which he deems sufficient to meet Jan’s temporary financial needs. Nothing in this opinion is intended to limit the parties’s rights on remand to file any pleadings which they may deem appropriate as a result of any material changes in circumstances which may have occurred following the entry of the judgment of divorce.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF LINCOLN COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.